STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-575


ALAN BERNARD

VERSUS

LOUISIANA TESTING & INSPECTION, INC., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2019-1490
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


REVERSED AND RENDERED.

James Steven Gates
Morrow, Gates & Morrow
P. O. Drawer 219
Opelousas, LA 70571-0219
Telephone:  (337) 942-6529
COUNSEL FOR:
    Plaintiff/Appellant – Alan Bernard

Lance C. Beal
1019 Coolidge Street
Lafayette, LA 70503
Telephone:  (337) 991-6263
COUNSEL FOR:
    Plaintiff/Appellant – lan Bernard

**Kenneth Hebert**
**405 W. Main Street – Suite 105**
**Lafayette, LA 70501**
**Telephone: (337) 991-6263**
**COUNSEL FOR:**
**Plaintiff/Appellant – Alan Bernard**

**Gary McGoffin**
**Durio, McGoffin, Stagg Ackermann, P.C.**
**220 Heymann Boulevard**
**Lafayette, LA 70503**
**Telephone: (337) 233-0300**
**COUNSEL FOR:**
**Defendants/Appellees – Louisiana Testing & Inspection, Inc. and Joseph Guilbeaux**

**THIBODEAUX, Chief Judge.**

Plaintiff, Alan Bernard, appeals the judgment of the trial court in favor of the defendants, Louisiana Testing and Inspection, Inc. (LTI) and Joseph H. Guilbeaux, and dismissing his Petition for Mandamus to inspect the financial records of LTI. Additionally, on appeal, LTI and Mr. Guilbeaux have raised peremptory exceptions of no right of action and acquisitive prescription. For the following reasons, we reverse the judgment of the trial court, and deny the exceptions of no right of action and acquisitive prescription.

## I.

## ISSUES

We must decide:

(1)    whether the trial court manifestly erred in finding that Alan Bernard failed to meet his burden of proof and denying the writ of mandamus to inspect LTI's corporate records;

(2)    whether Joseph Guilbeaux has acquired ownership of the 1500 shares of stock in question through acquisitive prescription; and

(3)    whether Alan Bernard has a right of action to seek a writ of mandamus to inspect LTI's corporate records.

## II.

## FACTS AND PROCEDURAL HISTORY

On August 19, 1968, Vernon Bernard was issued 1500 shares of stock in LTI. He purchased these shares from Harry Smith, an LTI shareholder, for the price of $3000. Additionally, Vernon Bernard used his drilling rig to provide services to LTI and signed assignments of accounts receivable to the American

Bank. Vernon Bernard died in 2015, and his succession was handled together with that of his late wife by attorney Vincent Saitta. In a settlement agreement, the heirs of the Bernards transferred ownership of the 1500 shares of stock to plaintiff, Alan Bernard.

Alan Bernard filed a petition for a writ of mandamus to inspect and copy the corporate books of LTI after being denied such access by Mr. Guilbeaux and the corporation. Alan Bernard asserted that he was a fifteen percent owner of LTI as he inherited the 1500 shares of LTI stock through his parents' successions. LTI and Mr. Guilbeaux denied Alan Bernard's claims of ownership and filed peremptory exceptions of no right of action and acquisitive prescription. They alleged that Vernon Bernard failed to give proper consideration for the shares, and that he terminated his involvement and ownership in LTI in the mid-1970s. LTI and Mr. Guilbeaux also alleged that Mr. Guilbeaux has been the sole shareholder of LTI since at least 1992.

At the trial, a copy of the stock certificate was admitted into evidence. Alan Bernard testified regarding the current location of the original stock certificate. He claimed that it was lost after a fire destroyed his home. He also presented live testimony from his sister, Lisa Bernard Domingue, regarding the storage of the original certificate in her father's safe, and testimony from his brother, Glen Bernard, regarding his father's involvement in LTI. The parties stipulated to testimony from the succession attorney, Vincent Saitta, that the original stock certificate was kept in a safe at the home of Vernon Bernard, and at the close of the succession, Mr. Saitta delivered the certificate to Alan Bernard. There was also stipulated testimony from Darrell Clavelle identifying his father's signature on the copy of the stock certificate. Mr. Guilbeaux testified for the

2

defense, and the court received stipulated testimony from Christine Meyers, the LTI secretary of 42 years, that Mr. Guilbeaux was the sole owner of LTI. In addition, the defense submitted tax and corporate documents in which Mr. Guilbeaux claimed himself as the sole owner of LTI.

At the close of trial, the trial judge noted that a key witness in the case would have been Lacie Gautreaux because Alan Bernard testified that she recovered a safe containing the stock certificate after the fire at Alan Bernard's home. The trial court determined that since Lacie Gautreaux never testified, it is presumed that her testimony would be adverse to the plaintiff's case. The trial court also found that Mr. Guilbeaux's testimony was credible but that of Alan Bernard and Glen Bernard was not. Finding that Alan Bernard failed to put forth a credible witness, the trial court concluded that he had not met his burden and issued a judgment in favor of LTI and Mr. Guilbeaux. Alan Bernard appealed, and LTI and Mr. Guilbeaux filed exceptions of no right of action and acquisitive prescription in this court.

III.

## STANDARD OF REVIEW

"Findings of fact regarding whether to issue a writ of mandamus are subject to the manifest error standard of review." *Hess v. M & C Ins., Inc.*, 14-962, p. 3 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200, 1203. An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "When findings are based on determinations regarding the credibility of witnesses, the manifest error—

3

clearly wrong standard demands great deference to the trier of fact's findings." *Id.*

However,

> [w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

*Id.* at 844-45.

> An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles

*Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

IV.

## LAW AND DISCUSSION

## MANDAMUS

Alan Bernard contends that the trial court erred in finding that he failed to meet the burden of proof for a writ of mandamus to inspect and copy LTI's corporate books. Louisiana Code of Civil Procedure Article 3864 provides:

> A. A writ of mandamus may be directed to a corporation or an officer thereof to compel either of the following:
>
> (1) The holding of an election or the performance of other duties required by the corporation's articles of incorporation or bylaws, or as prescribed by law.
>
> (2) The recognition of the rights of the corporation's members or shareholders.

4

Additionally, La.R.S. 12:1-1602 provides:

A. A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in R.S. 12:1-1601(E) if the shareholder gives the corporation a signed written notice of the shareholder's demand at least five business days before the date on which the shareholder wishes to inspect and copy.

. . . .

C. A shareholder of at least five percent of any class of the issued shares of a corporation for at least the preceding six months is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any and all of the records of the corporation if the shareholder meets the requirements of Subsection D of this Section and gives the corporation a signed written notice of the shareholder's demand at least five business days before the date on which the shareholder wishes to inspect and copy the records. A shareholder of less than five percent of a corporation's issued shares may exercise the rights provided in this Subsection if the shareholder delivers to the corporation, either before or along with the written notice of demand, written consents to the demand by other shareholders who, in the aggregate with the shareholder making the demand, own the required percentage of shares for the required period.

D. A shareholder may inspect and copy the records described in Subsection C of this Section only if the following conditions are satisfied:

(1) The shareholder's demand is made in good faith and for a proper purpose.

(2) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect.

(3) The records are directly connected with the shareholder's purpose.

E. The right of inspection granted by this Section may not be abolished or limited by a corporation's

articles of incorporation, bylaws, unanimous governance agreement, or any other agreement.

"The common standard of proof in civil cases is a preponderance of the evidence." *Joseph v. Broussard Rice Mill, Inc.*, 00-628, p. 7 (La. 10/30/00), 772 So.2d 94, 100. Thus, Alan Bernard had to prove by a preponderance that he was a shareholder of LTI which would entitle him to the writ of mandamus to inspect and copy the corporation's books. The trial court determined that he failed to put forth a credible witness, and therefore failed to meet his burden. This court does not dispute the trial court's finding regarding the credibility of Alan Bernard or Glen Bernard as witnesses. However, given the unrefuted objective evidence of ownership presented at trial, we find that the trial court was manifestly erroneous in its ruling that Alan Bernard failed to meet his burden.

Before Alan Bernard testified at trial, the stipulated testimony of the succession attorney, Vincent Saitta, was read into the record. Mr. Saitta's testimony established that the original stock certificate #20, evidencing the 1500 shares of stock in LTI issued to Vernon Bernard, was held in a safe and delivered by Lisa Bernard Domingue to Mr. Saitta. In a settlement agreement, the Bernard heirs transferred ownership of the shares of stock to Alan Bernard, and the certificate was delivered to Alan Bernard by Mr. Saitta. The copy of the stock certificate was verified by Mr. Saitta as a copy of the certificate which he delivered to Alan Bernard and was signed by the independent executrix.

Additionally, Lisa Bernard Domingue testified that she had lived with her father, Vernon Bernard, prior to his death and had seen the original certificate in the safe after her mother died in 2011. Furthermore, she testified that she handed the certificate to Mr. Saitta during her father's succession and she

6

identified the copy presented in court as a copy of the certificate which she delivered. Unlike the testimony of Alan and Glen Bernard, the trial court did not find that Ms. Domingue's testimony lacked credibility.

The undisputed testimony of Mr. Saitta and Ms. Domingue proved that Vernon Bernard had possession of the original stock certificate at the time of his death, and that the original certificate was delivered to Alan Bernard.

While possession of the stock certificate is prima facie evidence of corporate ownership, it is not conclusive evidence, or actual ownership. *Smith v. Smith,* 311 So.2d 514 (La.App. 3 Cir. 1974), *writ denied*, 313 So.2d 840 (La.1975). The trial court took issue with Alan Bernard's explanation as to the disappearance of the stock certificate. However, other objective evidence in the record establishes Alan Bernard's ownership of the 1500 shares of stock.

Glen Bernard provided testimony explaining Vernon Bernard's purchase of the shares from Harry Smith, and the services he provided to LTI. The trial court found that this testimony lacked credibility, noting that "[h]e remembered an incredible amount of detail from when he was 17 years old of a 1968 discussion that took place in a supper that Mr. Guilbeaux says never even took place." The trial court found Mr. Guilbeaux's testimony "to be credible, that he testified consistently and credibly." Mr. Guilbeaux testified that Vernon Bernard purchased 1500 shares in LTI from Harry Smith. He also verified that stock certificate #20 was issued to Vernon Bernard representing the 1500 shares and identified his signature on the copy presented in court. Following the testimony of Mr. Guilbeaux, which the trial court deemed credible, there is a presumption that Vernon Bernard was the owner of the 1500 shares in question.

7

The defendants seek to challenge that right of ownership. In doing so they assume a "heavy burden." *Davidson v. American Paper Manufacturing Co.*, 175 So.2d 753 (La.1937). We find that LTI and Mr. Guilbeaux failed to meet that burden. LTI and Mr. Guilbeaux argued that no ownership right existed because Vernon Bernard failed to give proper consideration. The evidence presented at trial overwhelmingly refutes this assertion. Mr. Guilbeaux himself admitted that Vernon Bernard paid a sum of $3000 when he purchased his shares from Harry Smith. He confirmed that Vernon Bernard offered his drilling rig for LTI's use on multiple occasions and acknowledged Vernon Bernard's signature on assignments of accounts receivable from LTI to American Bank. Thus, the record is abundantly clear that consideration was given for the 1500 shares by Vernon Bernard.

In addition to lack of consideration, LTI and Mr. Guilbeaux asserted that Vernon Bernard terminated or resigned from his ownership sometime in the 1970s. As one of the original incorporators of LTI, Mr. Guilbeaux testified that the shares were working shares. When a shareholder wished to leave the company, he was to return his stock and receive a reimbursement of his capital contribution. Mr. Guilbeaux confirmed that all prior shareholders had followed that procedure. However, his testimony reveals that Vernon Bernard never returned his stock, nor was he ever reimbursed his $3000 payment. In fact, Mr. Guilbeaux refers to the 1500 shares as fifteen percent of the company that "wasn't given back to me." It is clear from the testimony of Mr. Guilbeaux that Vernon Bernard never took the action necessary to resign or terminate his ownership in LTI. Therefore, Vernon Bernard retained ownership of the 1500 shares of LTI and those shares passed onto Alan Bernard through the succession.

The record contains ample objective and documentary evidence to sufficiently overcome the trial court's lack of credibility findings and to support a reversal. Furthermore, the credibility of Alan Bernard's testimony had little relevance in determining the legal issues in the case. The trial court rejected Alan Bernard's testimony regarding the missing certificate, but the actual certificate was not necessary to prove ownership. Other evidence in the record established that Alan Bernard inherited the shares from his father's succession. Regardless of whether Alan Bernard currently possesses the certificate of stock, the ownership has properly transferred to him. Similarly, the trial court determined that the failure to call Lacie Gautreaux warranted application of an adverse presumption. The location of the stock certificate is irrelevant to the legal issue of ownership in this case, and the trial court erred in applying the adverse presumption.

Alan Bernard asserted several other assignments of error on appeal. Given our decision to reverse the trial court judgment and grant the writ of mandamus, a review of those assignments is unnecessary.

## ACQUISITIVE PRESCRIPTION

In addition to their reply, LTI and Mr. Guilbeaux filed peremptory exceptions of no right of action and acquisitive prescription with this court. "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." La.Code Civ.P. art. 2163. The exceptions were timely filed, and the record has been sufficiently developed.

9

LTI and Mr. Guilbeaux contend that Mr. Guilbeaux acquired the 1500 shares originally purchased by Vernon Bernard through acquisitive prescription. We disagree.

"Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. Louisiana Civil Code Article 473 classifies corporate stock as incorporeal movables. "One who has possessed a movable as owner for ten years acquires ownership by prescription." La.Civ.Code art. 3491.

It is well established that the party pleading acquisitive prescription bears the burden of proving the facts to support it. *Mistric v. Kurtz*, 610 So.2d 226 (La.App. 3 Cir.1992), *writ denied*, 612 So.2d 102 (La.1993). Thus, the defense bears the burden of proving Mr. Guilbeaux's possession of the stock as owner for the required ten years.

"Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name. . . . The rules governing possession apply by analogy to the quasi-possession of incorporeals." La.Civ.Code art. 3421. Additionally, "possession must be continuous, uninterrupted, peaceable, public and unequivocal." La.Civ.Code art. 3476. The 1500 shares in question were owned by Vernon Bernard until his death when ownership passed to Alan Bernard. To acquire through acquisitive prescription, Mr. Guilbeaux must have possession of the stock sufficient to disturb Vernon and Alan Bernard's ownership.

In *Thornton v. Thornton Farms, Inc*., 526 So.2d 315 (La.App. 3 Cir. 1988), this court affirmed that corporate stock was susceptible of acquisitive prescription. In that case, we found that possession of the certificate by the

10

defendants was "open and notorious." *Id.* We held that because the defendants possessed the stock certificate for the required period, ownership was acquired through acquisitive prescription. *Id.* The record is clear that Mr. Guilbeaux never possessed the stock certificate for the 1500 shares. LTI and Mr. Guilbeaux rest their argument primarily on documents submitted in which Mr. Guilbeaux purported to be the 100 % owner of LTI. Even if such actions could amount to possession of the stock, it could not be considered public. Mr. Guilbeaux listed himself as full owner of LTI on documents filed with the Secretary of State, the IRS and in his wife's succession. However, filing these documents was not enough to put Vernon Bernard on notice that his dominion was being challenged and, therefore, cannot amount to public or unequivocal possession by Mr. Guilbeaux.

We find that LTI and Mr. Guilbeaux failed to prove the facts essential to establishing acquisitive prescription. Therefore, the peremptory exception of acquisitive prescription is denied.

## NO RIGHT OF ACTION

"The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit[.]" *State in Interest of K.C.C.*, 15-1429, p. 5 (La. 1/27/16), 188 So.3d 144, 146. The cause of action in this case is a petition for a writ of mandamus to inspect and copy the corporate books of LTI. According to La.R.S. 12:1-1602, to assert this claim, one must be a shareholder of the corporation in question. The one bringing the exception bears the burden of proof at the trial of the peremptory exception. *Carter v. Haygood*, 04-646 (La.

11

1/19/05), 892 So.2d 1261. Thus, LTI and Mr. Guilbeaux had to prove that Alan Bernard did not have an ownership interest in LTI.

Alan Bernard contends that his ownership interest stems from his father's purchase of 1500 shares of LTI in 1968. The record establishes that ownership transferred to Alan Bernard through his father's succession. LTI and Mr. Guilbeaux assert that Alan Bernard lacks an ownership interest because his father forfeited his stock interest, he failed to produce the original stock certificate, and Mr. Guilbeaux acquired 100% ownership of LTI through acquisitive prescription. Each of these three assertions have been previously rejected by this court. LTI and Mr. Guilbeaux failed to put forth evidence of Vernon Bernard's termination of ownership, the original stock certificate is not necessary to prove ownership, and Mr. Guilbeaux has not proved possession of the stock necessary for acquisitive prescription.

LTI and Mr. Guilbeaux have not met their burden of proving that Alan Bernard lacked an ownership interest in LTI. Therefore, the exception of no right of action is denied.

V.

## CONCLUSION

For the foregoing reasons, we find that the trial court manifestly erred in finding that Alan Bernard failed to meet the burden of proof for a writ of mandamus to inspect and copy the corporate books of LTI. Accordingly, we reverse the judgment of the trial court and grant Alan Bernard's writ of mandamus. Additionally, we deny the peremptory exceptions of no right of action and acquisitive prescription filed by LTI and Mr. Guilbeaux.

**REVERSED AND RENDERED.**

12